UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRI L. STEFFEN,

                Plaintiff,

v.                                               Case No.  8:04-cv-1693-T-24 MSS

AKERMAN SENTERFITT, a Florida
professional association, and MICHAEL I.
GOLDBERG,

                Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants' motion for summary judgment (Doc. No. 71).  Plaintiff filed an opposition thereto (Doc. No. 83).  With leave of the Court, Defendants filed a Reply Brief (Doc. No. 97).

### I.     Procedural History and Factual Background[1]

The factual background of this case is a long and complicated saga involving district, appellate, and bankruptcy courts in New York, the District of Columbia, and Florida.  The Court will begin its greatly condensed recitation of the facts in 1989.

In 1989, Paul A. Bilzerian[2] ("Bilzerian") was convicted of securities fraud and conspiracy to defraud the United States in the United States District Court for the Southern

---

[1] While this Court cites to several of the reported opinions involving Bilzerian in the Procedural History and Factual Background, it is only taking judicial notice of the dates, the judicial acts taken, and the subject matter of the various cases, and not the findings of fact made in those cases.  See United States v. Jones, 29 F.3d 1549, 1553 - 55 (11th Cir. 1994).

[2] Bilzerian is the husband of Plaintiff.

District of New York.  See U.S. v. Bilzerian, 926 F.2d 1285 (2nd Cir. 1991), cert. den. 502 U.S.

813 (1991).[3]  Separately, the Securities and Exchange Commission ("SEC") brought a civil suit

in the United States District Court for the District of Columbia ("D.C. Court") seeking

disgorgement of any illegal profits Bilzerian had received from the fraud.  In 1991, the SEC

obtained a partial summary judgment against Bilzerian and later a disgorgement order for over

sixty million dollars ("Disgorgement Order").  See SEC v. Bilzerian, 1991 WL 83964 (D.D.C.

1991), aff'd 29 F.3d 689 (D.C. Cir. 1994); SEC v. Bilzerian, 814 F. Supp. 116 (D.D.C. 1993);

SEC v. Bilzerian,1993 WL 542584 (D.D.C. 1993).[4]

In August 1991, Bilzerian filed for bankruptcy in the Middle District of Florida.  See In

re Bilzerian, 153 F.3d 1278 (11th Cir. 1998).  Before the bankruptcy filing, Bilzerian transferred

most of his interests in assets owned jointly with Plaintiff to Plaintiff individually.  See Steffen v.

Gray, Harris & Robinson, P.A., 283 F. Supp. 2d 1272, 1276 (M.D. Fla. 2003).  The bankruptcy

trustee challenged those transfers.  The resulting litigation concluded with an approved

settlement agreement between the bankruptcy trustee and Plaintiff (the "Bankruptcy

Settlement"), which allowed Plaintiff to purchase Bilzerian's interest in the transferred assets.

See id. at 1278.  Bilzerian was granted a discharge, which he claimed discharged the D.C.

Court's $62 million disgorgement judgment.  See id. at 1277.  In 1998, the Eleventh Circuit

affirmed the district court's holding that the SEC judgment, and consequently the Disgorgement

---

[3]With respect to his criminal conviction, Bilzerian served a twenty month prison sentence and paid a $1.5 million fine (Doc. No. 84, Exh. E, Bilzerian Decl., ¶ 8).

[4]On January 28, 1993, the D.C. Court entered a judgment requiring Bilzerian "to disgorge $33,140,787.07 plus interest." On June 25, 1993, the D.C. Court ordered that the prejudgment interest to be disgorged by Bilzerian was $29,196,812.46 (collectively the "Disgorgement Order").

Order, were not dischargeable in bankruptcy.  See SEC v. Bilzerian (In re Bilzerian), 1996 WL

885850 (M.D. Fla. 1996), aff'd 153 F.3d 1278, reh'g en banc den., 166 F.3d 355 (11th Cir.

1998).

In 2000, the SEC obtained an order holding Bilzerian in civil contempt for a violation of

the Disgorgement Order.[5]  See SEC v. Bilzerian, 112 F. Supp. 2d 12 (D.D.C. 2000)(the "August

21, 2000 Order").  In finding Bilzerian able to pay at least part of the Disgorgement Order[6], the

court concluded Bilzerian had "transferred his substantial assets into a complex ownership

structure of off-shore trusts and family-owned companies and partnerships," which included in

part: Overseas Holding Limited Partnership ("OHLP"), Overseas Holding Company ("OHC"),

Bicoastal Holding Company ("BHC"), and The Paul A. Bilzerian and Terri L. Steffen Revocable

Trust of 1995 ("the Trust").  See id. at 18 - 23.  Bilzerian and Plaintiff had also set up an

irrevocable trust for the benefit of their children in 1994 (the "Children's Trust").  See id. at 22.

On December 22, 2000, the D.C. Court entered an order appointing Deborah R.

Meshulam as a receiver ("Receiver") for the purpose of "identifying, marshalling, receiving, and

liquidating" Bilzerian's assets in satisfaction of the disgorgement judgments.  See SEC v.

Bilzerian, 127 F. Supp. 2d 232 (D.D.C. 2000)("December 22, 2000 Order").  In the order, the

D.C. Court created the Receivership Estate which included, but was not limited to:

[T]he 'Bilzerian Related Entities,' defined to mean entities or assets in which

---

[5]At the time of the August 21, 2000 Order, Bilzerian had not paid any of the
approximately $62 million the D.C. Court ordered him to disgorge in the Disgorgement Order.
On January 12, 2001, Bilzerian was incarcerated for civil contempt.  See SEC v. Bilzerian, 145
F. Supp. 2d 65 (D.D.C.  2001)

[6]Bilzerian had claimed he was financially unable to comply with the Disgorgement
Order.

this Court finds or has found that Bilzerian has an interest, including but not limited to The Paul A. Bilzerian and Terri L. Steffan [sic] Revocable Trust of 1995, Overseas Holding Company, Bicoastal Holding Company, Overseas Holdings Limited Partnership, and the Paul A. Bilzerian and Terri L. Steffan [sic] Irrevocable Trust of 1994.

The order further required:

Bilzerian, his agents, servants, employees, trustees, attorneys, attorneys-in-fact, successors, assigns, and any other persons who are in custody or have possession or control of any assets, books, records or other property of Bilzerian . . . including the Bilzerian Related Entities . . . who receive notice of this Order, shall forthwith give access to such assets, books, records or other property to the Receiver.

The Receiver was to "take and maintain complete and exclusive control, possession and custody of Bilzerian's assets wherever situated." Id.

On or about December 22, 2000, based upon her belief that Plaintiff possessed assets, books, records or other property in which Bilzerian had an interest, the Receiver sent Plaintiff correspondence and a copy of the December 22, 2000 Order directing the Receiver to identify, marshal, receive and liquidate Bilzerian's assets (Doc. No. 65, Meshulam Dep., pp. 21 - 23). Additionally, the Receiver had the December 22, 2000 Order appointing her as Receiver filed with the United States District Court for the Middle District of Florida[7] (Doc. No. 65, Meshulam Dep., pp. 13 - 14).

On March 1, 2001, the Receiver obtained, ex parte, a temporary order freezing the bank accounts of Plaintiff, OHLP, Loving Spirit Foundation ("LSF"), and BHC (collectively the "Steffen Entities") for a period of fourteen business days (the "Freeze Order")(Doc. No. 9-13, Amended Complaint, ¶7; Doc. No. 85, Guerrant Dep., Exh. 113). On March 16, 2001, the Receiver filed a motion for extension of the Freeze Order (Doc. No. 9-13, Amended Complaint,

_____

[7]Case No. 8:01-mc-00001.

4

¶8).  The motion for extension of the Freeze Order was set for a hearing on March 20, 2001 (Doc. No. 29, Steffen Dep., pp. 141 - 142).

On March 18, 2001, two days before the hearing, Plaintiff signed an engagement agreement with Defendants hiring them to take the necessary steps to ensure that her assets, and the Steffen Entities' assets, were unfrozen  (Doc. No. 9-13, ¶9).  Defendant Michael I. Goldberg ("Goldberg"), a lawyer with Defendant Akerman Senterfitt & Eidson, P.A. ("Akerman"), consented to the entry of an order in the D.C. Court extending the asset freeze and continuing the hearing until April 5, 2001 (the "March 21, 2001 Stipulated Order")(Doc. No. 71, Exh. 3).  The March 21, 2001 Stipulated Order also provided that Plaintiff and the Steffen Entities would produce "all documents previously requested by the Receiver that are in or come into possession, custody or control" of Plaintiff and the Steffen Entities[8] by 5:00 PM EST on March 27, 2001, subject to any claims of privilege Plaintiff or the Steffen Entities might have had.  The Receiver stated in her deposition that the March 21, 2001 Stipulated Order merely ordered the production of the documents which she was entitled access to under the December 22, 2000 Order (Doc. No. 65, Meshulam Dep., pp. 75 - 78).

Between March 27 and April 4, 2001, Plaintiff sent documents and records to Goldberg, which Goldberg forwarded to the Receiver (Doc. No. 29, Steffen Dep., pp. 190 - 191).  Plaintiff stated in her deposition that she produced all the documents Defendants asked her to produce (Doc. No. 29, Steffen Dep., pp. 201-203).  Goldberg, however, stated in his deposition that during the course of the April 5, 2001 hearing, the Receiver communicated information to him which led him to believe that Plaintiff and the Steffen Entities had not produced all the

---

[8]And OHC.

documents in their possession, custody, and control (Doc. No. 67, Goldberg Dep., p. 146). Goldberg stated in his deposition that the Receiver was adamant that she wanted all documents responsive to the December 22, 2000 Order (Doc. No. 67, Goldberg Dep., pp. 146 - 49). Following the April 5, 2001 hearing, the D.C. Court extended the asset freeze.  On or about April 20, 2001, Defendants filed a motion to withdraw as counsel.  On May 3, 2001, the Receiver filed a motion seeking to hold Plaintiff and the Steffen Entities in contempt for failing to comply with the terms of the December 22, 2000 Order and the March 21, 2001 Stipulated Order. Specifically, the Receiver had not gotten production of the documents that the December 22, 2000 Order and the March 21, 2001 Stipulated Order required Plaintiff to produce (Doc. No. 65, Meshulam Dep., pp. 78 - 81).  On May 10, 2001, the D.C. Court granted Defendants' motion to withdraw (Doc. No. 9-13, Amended Complaint, ¶16).

On June 8, 2001, the D.C. Court entered an order requiring Plaintiff and the Steffen Entities to show cause in writing why they should not be held in contempt for failing to comply with the court's prior orders (Doc. No. 65, Meshulam Dep., pp. 83 - 84; Doc. No. 66, Reidel Dep., p. 7).[9]  In June 2001, Plaintiff retained Harley Riedel ("Riedel") to represent her in her Chapter 11 bankruptcy case (Doc. No. 66, Riedel Dep., pp. 7 - 8; Doc. No. 83, Exh. A., Riedel Decl., ¶2).[10]  Plaintiff, through Riedel, produced over 9,000 pages of documents to the Receiver (Doc. No. 66, Riedel Dep., p. 44).

On December 17, 2001, after a period of negotiations, Plaintiff and the Steffen Entities

---

[9]The Court culled this information from the depositions of the Receiver and Riedel since it was not furnished a copy of the D.C. Court's June 8, 2001 Order.

[10]When Riedel undertook the representation of Plaintiff, she had already filed for relief pursuant to Chapter 11 of the Bankruptcy Code (Doc. No. 83, Exh. A., Riedel Decl., ¶3).

entered into a settlement agreement that resolved the SEC's and the Receiver's claims with

respect to Plaintiff's property (the "SEC Settlement")(Doc. No. 9-13, Amended Complaint, ¶22;

Doc. No. 71, Exh. 4; Doc. No. 66, Riedel Dep., pp. 52 - 54).   On January 16, 2002, the D.C.

Court entered a final judgment by consent against Plaintiff and the Steffen Entities in favor of

the SEC which divided the assets of Steffen and the Steffen Entities (the "Final Judgment")(Doc.

No. 70, Exh. 5; Doc. No. 66, Riedel Dep., pp. 52 - 54).

On May 6, 2002, Plaintiff filed an action for legal malpractice[11] against the law firm of

Gray, Harris & Robinson, P.A. and attorney Geoffrey T. Hodges (collectively "Gray Harris")

whom she had employed for estate planning and asset protection purposes.   Plaintiff claimed that

due to their negligent advice, she suffered losses of more than ten million dollars.    Specifically,

she claimed that on the advice of Gray Harris she formed a system of trusts which  needlessly

exposed her assets during Bilzerian's contempt hearings (the "Gray Harris Malpractice

Litigation").   See Steffen v. Gray, Harris & Robinson, P.A., 283 F. Supp. 2d 1272 (M.D. Fla.

2003)("Steffen (I)"); aff'd 138 Fed. Appx. 297 (Table).[12]

On December 16, 2004, Plaintiff, appearing pro se, filed her original complaint in this

action (Doc. No. 9-1).   On May 28, 2004, still proceeding pro se, Plaintiff filed her amended

---

[11]Bilzerian was added as a nominal plaintiff.

[12]The Eleventh Circuit provides by rule that unpublished opinions are not considered binding precedent.   They may be cited as persuasive authority, provided that a copy of the unpublished opinion is attached to or incorporated within the brief, petition or motion. Defendants provided a copy of the Eleventh Circuit's March 22, 2005 unpublished opinion (No. 03-15278) as an exhibit to their Statement of Undisputed Facts in Support of Their Motion for Summary Judgment (Doc. No. 70, Exh. 1, Steffen v. Gray Harris & Robinson, P.A., No. 03-15278 (11th Cir. 2005)("Steffen (II)")).

complaint (Doc. No. 9-13) .[13]  In her one-count amended complaint, Plaintiff asserts a claim for legal malpractice arising out of the period of time when Defendants represented Plaintiff in her efforts to unfreeze her assets.  Defendants now move for summary judgment on Plaintiff's amended complaint.

## II.      Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See id.  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

---

[13]Plaintiff filed her complaint and amended complaint in adversary proceeding, AP Pro. No. 8:03-ap-798-ALP, in the United States Bankruptcy Court for the Middle District of Florida. On July 13, 2004, this Court granted Defendants' motion to withdraw the reference from the bankruptcy court for adversary proceeding 8:03-ap-798-ALP  (Doc. No. 6).  On July 27, 2004, this Court entered an Order directing the Clerk of the Bankruptcy Court to close the adversary proceeding and to forward all of the pleadings in the adversary proceeding to this Court to be docketed in this case (Doc. No. 8).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989); see also Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness."  [citation omitted].  The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts.  When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.  See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

**III.    Discussion**

Plaintiff asserts a claim for legal malpractice arising out of the less than two month period of time in 2001 when Defendants represented Plaintiff in her efforts to unfreeze her

assets.  In her amended complaint, Plaintiff claims that she lost more than one-half of her

property as a result of Defendants' alleged negligence in their legal representation of her (Doc.

No. 9-13, Amended Complaint, ¶23).[14]  Specifically, Plaintiff argues that "the issue in this case

is whether the negligence committed by Defendants placed Plaintiff in such a disadvantageous

position that she settled on terms and conditions that were more likely than not less than they

would have been had Defendants not committed malpractice" (Doc. No. 84).  Defendants

contend they are entitled to summary judgment in their favor because they did not proximately

cause Plaintiff's alleged losses, and/or Plaintiff's claim is barred by the statute of limitations.

Alternatively, Defendants contend they are entitled to partial summary judgment in their favor

because Plaintiff cannot recover those alleged damages which were suffered by third parties,

and/or because Plaintiff cannot recover for emotional damages.

A.      Statute of Limitations

      The statute of limitations in Florida for an action against an attorney for malpractice is

two years.  See FLA. STAT. §95.11(4)(a).  Plaintiff, appearing pro se, filed her original complaint

on December 16, 2003 (Doc. No. 9-1).[15]  In order to secure summary judgment based upon the

---

[14]Plaintiff alleges Defendants acted negligently as follows: "(a) agreeing to the stipulated order of March 21, 2001; (b) agreeing to the stipulated order of March 21, 2001 without performing sufficient due diligence to determine whether their clients could comply with its terms; (c) agreeing to the stipulated order but not providing Ms. Steffen and the Steffen Entities with a copy; (d) filing a motion to intervene in the SEC Case, subjecting Ms. Steffen and the Steffen Entities to the personal jurisdiction of the DC Court; and (e) refusing to perform any further legal work for Ms. Steffen and the Steffen Entities for nearly one month prior to the entry of an order allowing them to withdraw" (Doc. No. 9-13, Plaintiff's Amended Complaint, ¶ 28). Plaintiff later refined and expanded the instances of Defendants' alleged negligence (Doc. No. 70, Exh. 9, Plaintiff's Supp. Interrog. Resp., pp. 2-5).

[15]Plaintiff filed her complaint and amended complaint in adversary proceeding, AP Pro. No. 8:03-ap-798-ALP, in the United States Bankruptcy Court for the Middle District of Florida.

10

defense of statute of limitations, Defendants must establish that Plaintiff's cause of action accrued prior to December 16, 2001.  However, the facts in evidence make it clear that the statute of limitations didn't begin to run until January 16, 2002, when the DC Court entered the Final  Judgment which resolved the SEC's and the Receiver's claims with respect to Plaintiff's property and divided the assets of Steffen and the Steffen Entities.

The Florida Supreme Court has repeatedly held that a cause of action for litigation malpractice does not accrue until the underlying suit is either settled or finally determined.  See Fremont v. Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So. 2d 504, 506 (Fla. 2001); see also Blumberg v. USAA Casualty Ins. Co., 790 So. 2d 1061 (Fla. 2001).  "Due to the unique nature of legal malpractice claims, all of the required elements for such a claim often are not present until long after the relevant historical facts have occurred."  In re: Irwin, 325 B.R. 22, 27 (M.D. Fla. 2005)(citing In re Witko, 374 F.3d 1040, 1043 - 44 (11th Cir. 2004)). When a legal malpractice claim is based upon "errors committed in the course of litigation, and the litigation proceeds to judgment, the redressable harm is not established until final judgment is rendered."  Porter v. Ogden, Newell & Welch, 241 F.3d 1334, 1338 (11th Cir. 2001)(citing Silverstrone v. Edell, 721 So.2d 1173, 1175 (Fla. 1998)).

On September 19, 2001, Plaintiff listed in a bankruptcy schedule a "legal malpractice action against Akerman, Senterfitt & Edison, P.A." as one of her assets (Doc. No. 71, Exh. 2, Steffen's Summary of Schedules).  Therefore, it is clear that Plaintiff had knowledge of Defendants' alleged negligence prior to December 16, 2001.  However, "until the underlying action is concluded with an outcome adverse to the client (i.e., harm), 'a malpractice claim is hypothetical and damages are speculative.'"  In re Witko, 374 F.3d at 1044 (quoting Silverstone,

721 So. 2d at 1175).  The SEC Settlement became final on January 16, 2002, when the DC Court

entered the Final  Judgment.  Accordingly, Defendants' statute of limitations defense fails.

### B.      Defendants Did Not Proximately Cause Plaintiff's Alleged Damages

Under Florida law[16], in order to prevail on a claim of legal malpractice, "a plaintiff must

establish the existence of three essential elements: (1) that the defendant attorney was employed

by the plaintiff; (2) that the defendant attorney neglected a reasonable duty owed to the plaintiff;

and (3) that such negligence was the proximate cause of loss to the plaintiff."  Olmsted v.

Emmanuel, 783 So. 2d 1122, 1125 (Fla. 1st DCA 2001); see also Steffen (I), 283 F. Supp.2d at

1281.  The parties do not dispute that Plaintiff employed  Defendants.  Defendants specifically

deny that their actions were negligent.  However, for purposes of summary judgment,

Defendants argue that even assuming that Defendants were negligent during their representation

of Plaintiff, such negligence did not proximately cause Plaintiff's alleged losses.

With respect to the third element, i.e., proximate cause,  "the client has to prove that she

would have prevailed on the underlying action but for the attorney's negligence."  Tarleton v.

Arnstein & Lehr, 719 So. 2d 325, 328 (Fla. 4th DCA 1998).   Stated differently, "the attorney

must be the proximate cause of the adverse outcome of the underlying action which results in

damage to the client."  Silverstone v. Edell, 721 So. 2d 1173, 1175 (Fla. 1998).  "This

requirement has resulted in a legal malpractice action being referred to as a trial within a trial."

Tarleton, 719 So. 2d at 328.  In the present case, the underlying action was the SEC's action

against Bilzerian, in which the SEC was attempting to recover assets in which Bilzerian had an

interest.  The result of this action was a settlement in which Plaintiff and the Steffen Entities

---

[16]The Court notes that both parties cite to Florida law.

surrendered to the SEC a percentage of certain assets[17] (Doc. No. 70, Exh. 5, Final Judgment).

Hence, Plaintiff must establish the proximate cause element of her claim for malpractice.  That

is, to defeat Defendants' motion for summary judgment, Plaintiff must show that but for

Defendants' alleged negligence, she would not have surrendered the amount of assets which she

turned over to the SEC.

     "'In negligence actions Florida courts follow the more likely than not standard of

causation and require proof that the negligence probably caused the plaintiff's injury.'"

Tarleton, 719 So. 2d at 328-29 (quoting Gooding v. Univ. Hosp. Bldg., Inc., 445 So. 2d 1015,

1018 (Fla. 1984)).  On the element of causation, Plaintiff has the burden of proof.[18]  Plaintiff

must "introduce evidence which affords a reasonable basis for the conclusion that it is more

likely than not that the conduct of the defendant was a substantial factor in bringing about the

result.  A mere possibility of such causation is not enough; and when the matter remains one of

pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the

duty of the court to direct a verdict for the defendant. " Gooding, 445 So. 2d at 1018 (quoting

*Prosser, Law of Torts* §41 (4th ed. 1971)(footnotes omitted));see also Proto v. Graham, 788 So.

2d 393, 395 (Fla. 5th DCA 2001).

     Plaintiff argues that Defendants' negligence, in particular agreeing to the March 21,

2001 Stipulated Order, placed her and the Steffen Entities in such a disadvantageous negotiating

---

[17]Including real property located at 16229 Villareal de Avila, Tampa, FL 33613 (the
"Tampa Property"), cash, Cimetrix securities, Cimetrix bonds, real property located in
Minnesota, and a secured promissory note.

[18]After Defendants carry their burden of showing an absence of a genuine issue of
material fact, Plaintiff bears the burden of producing some evidence or pointing to some
inference that defeats summary judgment.

position that it adversely impacted the terms of the settlement ultimately reached with the SEC. This Court finds that the injury alleged by Plaintiff, i.e., loss of negotiating leverage, is too speculative to support the causation element of Plaintiff's legal malpractice claim. Plaintiff's theory of harm asks this Court to engage in pure speculation as to what might have happened had the March 21, 2001 Stipulated Order not existed.

>    i.    **No Record Evidence that Plaintiff Could Have Litigated On the Merits**

To have successfully litigated on the merits, Plaintiff would have had to somehow establish that the SEC was not entitled to recover the assets at issue. Based upon the record evidence in this case, or lack thereof, Plaintiff cannot establish that the subject assets were immune or exempt from SEC collection. In fact, the issue of whether the SEC could reach the assets has already been determined in three separate federal district court decisions and affirmed by their respective federal appellate courts (including the Eleventh Circuit). See Steffen (I), 283 F. Supp. 2d at 1284 - 85 (concluding "that neither the Release executed in Bilzerian's bankruptcy nor the exemption of BHC stock in Bilzerian's bankruptcy prevented the SEC from either seeking to avoid the transfers to Steffen or pursuing some other direct claim against her or her assets"); Steffen (II), No. 03-15278 at 10 - 11; In re Bilzerian, 1996 WL 885850 (M.D. Fla. 1996)(holding that Bilzerian's SEC judgment was not dischargeable in bankruptcy), aff'd 153 F.2d 1278 (11th Cir. 1998). In the December 22, 2000 Order, the D.C. Court placed control over the subject assets with the Receiver. The December 22, 2000 Order was subsequently affirmed by the Circuit Court for the District of Columbia. See SEC v. Bilzerian, 75 Fed. Appx. 3 (D.C. Cir. 2003).

Alternatively, Plaintiff cannot establish that Bilzerian had less of an interest in the subject

assets than the amount turned over to the SEC, or that he had no interest at all.  First, the district

court in the Gray Harris Malpractice Litigation found that Bilzerian's "interest in and control

over property subject to the disgorgement order supports an asset freeze, contempt order, and

order compelling Steffen to disgorge the property lost by Steffen in the settlement."  Steffen (I),

283 F. Supp. 2d at 1284.  Secondly, Plaintiff has not provided any record evidence that could

support a  contention that Bilzerian did not have the interest in the subject assets that was

reflected in the SEC Settlement.  Plaintiff and her expert only speculate that the outcome may

have been different had they litigated the action against the Receiver (Doc. No. 68, Steffen Dep.,

pp. 208-09 and 250; Doc. No. 69, Addison Dep., p. 146).  Plaintiff's expert testified in his

deposition that he did not review any documents to determine whether Bilzerian had no interest

in the Steffen Entities (Doc. No. 69, Addison Dep., pp. 78 - 79).  A plaintiff cannot rely on

speculation or conjecture to prove causation in a legal malpractice action.  See Proto, 788 So. 2d

at 396.

        To support her contention that there is a genuine issue of fact with respect to causation,

Plaintiff relies on the testimony of Reidel, that

>    The existence of the March 21 Order, and the action taken by the Receiver to
>    hold Ms. Steffen in contempt of that order, had a negative impact on Ms. Steffen's
>    ability to litigate the issue of Ms. Steffen's ownership of her assets under 11 U.S.C.
>    § 541, or to require the Receiver to turnover Ms. Steffen's assets to her bankruptcy
>    estate under 111 U.S.C. §542.  As debtor in possession, Ms. Steffen might have had
>    rights under section 544 and other provisions of the Bankruptcy Code to defeat
>    the adverse claim of the Receiver to assets titled in her name.

(Doc. No. 83, Exh. B, Riedel Decl., ¶ 6).  However, Plaintiff completely ignores that Riedel

acknowledged that with respect to Freeze Order and the March 21, 2000 Stipulated Order,  he

had never come to any conclusion as to "exactly why or who or how those orders got entered, or

whether they should or should not have been" (Doc. No. 66, Riedel Dep., p. 31). In short,

Plaintiff has not put forth evidence to establish that but for Defendants' alleged negligence she

would have successfully proven through litigation that the SEC was not entitled to collect the

subject assets.

**ii      Whether Plaintiff Could Have Negotiated a More Favorable<br>Settlement Is Purely Speculative**

In response to Defendants' motion for summary judgment, Plaintiff claims "Defendants'

negligence caused her to turn over approximately 85% of her assets and keep only 15%" (Doc.

No. 83, citing Doc. No. 84, Exh. E., Bilzerian Decl. ¶9). Plaintiff argues that, in contrast, "the

Paul A. Bilzerian and Terri L. Steffen 1994 Irrevocable Trust ("Children's Trust"), which was

competently represented by Ben Hill and Hill, Ward & Henderson in the exact same case and

under almost identical circumstances, negotiated a settlement with the Receiver that allowed it to

*keep* over 70% of its assets" (Doc. No. 83, citing Doc. No. 84, Exh. E., Bilzerian Decl. ¶10).

The crux of Plaintiff's contention is that "the difference between the unfavorable settlement

reached by Plaintiff and the more favorable one reached by the Children's Trust was directly and

proximately caused by Defendants' malpractice" (Doc. No. 83). Plaintiff argues that there exists

a genuine issue of fact with respect to causation, sufficient to preclude summary judgement,

because "[t]he difference between giving up more than 85% of one's assets and giving up less

than 30% is dramatic" (Doc. No. 83).

There is only limited and piecemeal information in the record with respect to the

Children's Trust litigation and collateral settlement. However, the mere fact that the attorney for

the Children's Trust negotiated a more favorable settlement with the Receiver than did

Defendants on behalf of Plaintiff does not establish that Defendants' conduct caused the terms of

16

the SEC Settlement.  This Court will not speculate as to the possible reasons why the Receiver negotiated a smaller settlement amount from the Children's Trust.[19]  See Snair v. City of Clearwater, 817 F. Supp. 108, 133 (M.D. Fla. 1993)("Speculative evidence is insufficient to enable the nonmoving party to avoid summary judgment.").

This Court recognizes that in negligence cases, summary judgment should be cautiously granted since the determination of proximate cause is ordinarily a question of fact that should be left for the jury.  See Gulfstream Park Racing Ass'n v. Gold Spur Stable, Inc, 820 So. 2d 957, 960 (Fla. 4th DCA 2002).   However, Plaintiff has presented insufficient evidence to establish that there is a genuine issue of material fact with respect to the causation element of her legal malpractice claim.  Therefore, summary judgment is appropriate.  See USA Interactive v. Dow Lohnes & Alberton, P.L.L.C., 328 F. Supp. 2d 1294, 1313 - 14 (M.D. Fla. 2004); see also City of Delray Beach, Fla. v. Agriculture Ins. Co., 85 F.3d 1527, 1530 - 31 (11th Cir. 1996)("a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment").  In fact, with respect to the causation element of her legal malpractice claim in the Gray Harris Malpractice Litigation, the Eleventh Circuit held, "[t]he cause of Steffen's losses was her husband's liability for securities fraud and subsequent disgorgement order."  Steffen (II), No. 03-15278 at 11.

---

[19]The Court notes that Plaintiff argues that her expert "opined that Defendants proximately caused Plaintiff to settle the SEC claims for more than they were worth because of Defendants' negligence."  However, Plaintiff's citation to the record is incorrect and the Court cannot locate this testimony.  This Court is under no obligation to "plumb the record in order to find a genuine issue of material fact."  Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996).  See also Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) (holding that Rule 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of legal malpractice.

### C.      Plaintiff Cannot Recover Damages Suffered by Third Parties

Having found that Defendants are entitled to summary judgment on Plaintiff's claim of legal malpractice, the Court need not address whether Plaintiff can recover damages suffered by the Steffen Entities.  Notwithstanding, the Court will briefly address the issue of whether Plaintiff can recover as damages assets turned over to the SEC by the Steffen Entities.

Part of the damages Plaintiff is claiming in this lawsuit are the assets that were turned over to the SEC pursuant to the SEC Settlement and Final Judgment (Doc. No. 9-13, Amended Complaint, ¶23; Doc. No. 70, Exh. 9, Plaintiff's Supp. Interrog. Resp., pp. 7 and 9 - 10). Defendants argue, and this Court agrees, that Plaintiff cannot recover as damages those assets which were owned by or in the legal possession of the Steffen Entities, OHC, or the Children's Trust at the time of the transfer to the SEC.

### D.      Plaintiff's Emotional Damages

Since the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim of legal malpractice based on no proximate causation, the Court will not address whether Plaintiff would be entitled to emotional damages.

### IV.      Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)      Defendants' motion for summary judgment (Doc. No. 71) is **GRANTED**.

(2)      Defendants' Request for Oral Argument on Their Motion for Summary Judgment (Doc. No. 72) is **DENIED**.

(3)     Plaintiff's Request for Oral Argument (Doc. No. 86) is **DENIED**.

(4)     The Pretrial Conference in the above-captioned matter scheduled for

Thursday, December 8, 2005 at 8:30 a.m. is hereby cancelled.

(5)     The Clerk is directed to enter judgment in favor of Defendants and to **CLOSE**

this case.

**DONE AND ORDERED** at Tampa, Florida this 2nd  day of December, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record