UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRI L. STEFFEN,

    Plaintiff,

vs.                                    CASE NO.: 8:04-CV-1693-T-24-MSS

AKERMAN SENTERFITT, a
Florida professional association,
and MICHAEL I. GOLDBERG,

    Defendants.
_____/

## AFFIDAVIT

STATE OF FLORIDA        )
                                      )
COUNTY OF HILLSBOROUGH    )

    RAYMOND T. ELLIGETT, JR. states as follows:

    1.    I have been a member of the Florida Bar since 1978. I have been admitted to practice in the Middle District of Florida since 1978, and in the Eleventh Circuit Court of Appeals since 1981. Since my admission, my practice has included litigation in the Middle District of Florida, and I have been actively involved in the setting of fees and billing of clients. I have attached a copy of my resume.

    2.    Based on the information set forth herein, I offer the following opinions with regard to attorney's fees in this matter.

    3.    In reaching the opinions herein, I have considered the following: (a) multiple pleading files in this matter maintained by defense counsel; (b) the volume of additional materials maintained by defense counsel, which included: four boxes of files that the Akerman firm had maintained, one box of documents produced by the Plaintiff's subsequent

counsel in the underlying case, culled from defense counsel's review of documents, one box of documents obtained from the Receiver, culled from over 800 docket entries in the SEC receivership proceeding, nine redwells of documents the Plaintiff produced near the end of the case, three boxes of tapes of recordings the FBI made while monitoring Paul Bilzerian's telephone calls, and two shelves of documents consisting of depositions, legal research, and other materials. I considered the volume, but have not studied the contents of these files; (c) interviews with counsel who worked on the case; (d) interviews with attorneys who practice in the Middle District of Florida; (e) the time records for the Hill, Ward & Henderson firm for this matter and summaries of those records; (f) fee applications for Plaintiff's counsel filed in the bankruptcy court for this matter and for the Gray, Harris & Robinson matter; and (g) biographical information for the defense lawyers.

4. In formulating my opinion, I have considered the 12 *Johnson* factors. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, L.Ed.2d 439 (1986) n.7; *In re Honeywell Corporation,* 967 F.2d 568, 572 n.5 (11th Cir. 1992). The factors are reflected below in italics. I note that these factors encompass those set forth in Florida Rule of Professional Conduct 4-1.5(b).

5. *(1) The time and labor required.* The case was ultimately decided on summary judgment, which was affirmed on appeal. The summary judgment came on the eve of the scheduled pretrial, so that it was necessary for the defense to have fully prepared the case. This included counsel familiarizing themselves with the background of the underlying representation, review of extensive documents, preparing for, attending and reviewing depositions, legal analysis, preparing motions and supporting memoranda, preparing the appellate answer brief, and preparing pleadings on the entitlement to fees. The pleadings and

volume of documents reflect that the case was vigorously litigated with extensive discovery, and was document intensive.

6. I note that Plaintiff's counsel of record filed a fee petition in bankruptcy court seeking a fee of approximately $70,000 for this case, and had previously submitted larger fee applications seeking over $140,000 for similar litigation against the Gray, Harris & Robinson law firm. It is my understanding that those records do not reflect how much additional time may have been spent by others outside of the law firm of counsel of record for the Plaintiff, in particular how much time may have been spent assisting in the preparation of the case by the Plaintiff's husband, an experienced pro se litigator. I understand the Plaintiff's husband to be an experienced pro se litigator both from his reputation in the community, and from personal experience in a federal case in which he represented himself in the 1990's, in which I was local opposing counsel. I understand he is known to have assisted in this litigation, for example, in the review of documents.

7. I have considered that defense counsel billed the Defendant for work in the matter prior to the July, 2005, proposal for settlement, but understand that the time spent since did not duplicate the earlier efforts. I also note that different attorneys and paralegals worked on the matter, but based on my conversations with defense counsel, I am satisfied this was not duplicative or wasted effort. To the extent that I might have otherwise made a minor deduction of two to four hours for time spent to acquire the background necessary for a particular task in the case, that is more than offset by the generally below market rates, discussed below.

8. While not a critical basis for my opinions, I note that the work performed by defense counsel was performed on behalf of a law firm that was paying for this work itself, given what I understand was the size of its self-insured retention. I also understand the

defense bills were reviewed by a member of the Defendant law firm who functioned in the capacity of general counsel. It is my understanding these statements were paid by Defendant, and that payment was made with no guarantee of recovery from the Plaintiff or any other party in the future.

9. In my opinion, the time spent and the tasks reflected on the billing statements from July, 2005 through August, 2006 are reasonable.

10. *(2) The novelty and difficulty of questions.* The district court ultimately disposed of the case on summary judgment on a relatively narrow basis. However, the road to reach that result involved reviewing a substantial volume of documents and other materials, and legal analysis of the Plaintiff's claims that the alleged conduct of the lawyers proximately caused her damage. Even with the issues narrowed after summary judgment, the Plaintiff filed a 46-page initial appellate brief. The key issues in the case were not unique (as noted, Plaintiff had filed a similar claim against another law firm), but in my experience did differ from the typical claims in a legal malpractice case, and involved a significant degree of difficulty given the nature of the claims, the volume of documents, and the formidable opposing counsel who represented the Plaintiff. As indicated above, given the need to prepare for trial while preparing for and ultimately obtaining the summary judgment, it is my opinion that the time expended was appropriate given the novelty and difficulty of the questions involved.

11. *(3) The skill requisite to perform the legal service properly.* The nature of the litigation, including the magnitude of the documents and other background information noted, and the skills required to properly analyze the legal issues and to prepare the case, required a high to moderately high level of skill to perform the legal services. For example, proper analysis was necessary to determine which of the numerous documents and other

discovery were relevant to the defense of the Plaintiff's claims, to marshal that information, and to formulate the grounds on which counsel would defend the matter.

12.     *(4) The preclusion of employment by the attorney due to acceptance of the case.*  It is my understanding that the acceptance of this case did not preclude the employment of the attorneys in other matters.

13.     *(5) The customary fee.*  I am personally familiar with some of the defense counsel who worked on the matter and have reviewed the biographical information for the others, and have considered their experience and the billing rates reflected on the statements. Based on my understanding of customary fees charged by lawyers of similar skill in this area, the rates at which defense counsel and the paralegals were billed in this matter were at, or in most cases below, the customary rates of fees that would be charged for similar work in the Middle District and in Tampa.

14.     *(6) Whether the fee is fixed or contingent.*  The fee was fixed, not contingent, and would not be subject to any enhancement.

15.     *(7) Time limitations imposed by the client or circumstances.*  I am not aware of any time limitations imposed by the client. I note there were times when significant activity occurred in the litigation, including discovery, but do not find it to be out of the ordinary.  Thus, the factor of time limitations has not influenced my opinion on the reasonable fees in this matters.

16.     *(8) The amount involved and the results obtained.*  Plaintiff sought substantial damages against the Defendant ($115 to $125 million), which I understand significantly exceed the Defendant's insurance limits. Defense counsel obtained an outstanding result: a defense summary judgment, which was affirmed on appeal.

17.     *(9) The experience, reputation and ability of the attorneys.* My personal knowledge of some of the defense counsel, the interviews with defense counsel, a review of their biographical information, and a review of their efforts as reflected in the pleadings and orders in this case, indicate that they are experienced and capable attorneys. Senior defense counsel and the firm enjoy a good reputation in the Tampa area as competent civil litigators.

18.     *(10) The "undesirability" of the case.* I did not consider the defense case to be undesirable.

19.     *(11) The nature and length of the professional relationship of the client.* I understand Hill, Ward & Henderson has represented and represents the Akerman firm in other matters.

20.     *(12) Awards in similar cases.* I am not aware of fee awards in other legal malpractice cases brought in the Middle District. I have reviewed state court fee awards to members of Hill, Ward & Henderson in other matters and note that they were awarded comparable rates to what is sought here. They included: *M Space Holdings, LLC v. Byrne*, Manatee County Twelfth Judicial Circuit Case No. 2006CA-3750, Final Judgment, Judge Peter A. Dubensky (November 3, 2006), where attorneys Slater and Sherman were awarded fees at the 2006 rate sought in this matter.

I am also familiar with state court awards that include awards to attorneys with comparable experience to those involved in this litigation. Those awards, even without adjustment for being earlier in time, are at or above the amounts requested here for attorneys of comparable experience. These include: *McCoy v. Cypress Property & Casualty Insurance Company*, Hillsborough County Thirteenth Judicial Circuit Case No. 02-10722, Order Determining Attorneys' Fees, Judge William P. Levens (February 2, 2006); and *Auto-Owners Insurance Company v. Maharaj*, Hillsborough County Thirteenth Judicial Circuit

Case No. 02-04890, Order and Judgment on Attorneys' Fees, Judge Herbert J. Baumann, Jr. (May 19, 2003).

21.     Based on the foregoing, my opinion is that the amounts reflected in the billing statements of Hill, Ward & Henderson from July 7, 2005 forward through August 21, 2006 are reasonable. It is my opinion these amounts would constitute a reasonable fee award to the Defendant, together with interest since the date entitlement was decided. *See Quality Engineered Installation, Inc. v. Higley South, Inc.*, 670 So. 2d 929 (Fla. 1996).

DATED this 30th day of March, 2007.

RAYMOND T. ELLIGETT, JR.

I HEREBY CERTIFY that on this day personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, RAYMOND T. ELLIGETT, JR., who is personally known to me, and who signed the foregoing, and he acknowledged before me that he did so as his free act and deed, and who did take an oath and the things contained in the above and foregoing Affidavit are true and correct.

Sworn to and subscribed before me this 30th day of March, 2007.

Notary Public, State of Florida

Janice F Harmon
My Commission DD267640
Expires December 04, 2007

Name of Notary, typed, printed or stamped

(Notarial Seal)                                          My Commission Expires: