U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRI L. STEFFEN,

    Plaintiff,

vs.

Case No. 8:04-CV-1693-T-24MSS

AKERMAN, SENTERFITT & EIDSON, P.A.
a Florida professional association, and
MICHAEL I. GOLDBERG,

    Defendants.
_____/

## DEFENDANTS' SECOND AMENDED MOTION FOR ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW

Defendants, AKERMAN, SENTERFITT & EIDSON, P.A. and MICHAEL I. GOLDBERG (collectively "Akerman"), pursuant to Rule 54 of the Federal Rules of Civil Procedure, section 768.79 of the Florida Statutes, and this Court's Order dated March 20, 2007 (Dkt. 130), hereby move for entry of an award of attorneys' fees incurred in this matter. In support thereof, Akerman states as follows:

1.    Upon consideration of Akerman's Amended Motion for Attorneys' Fees (Dkt. 121), this Court ruled that Akerman is entitled to an award of attorneys' fees under section 768.79 of the Florida Statutes (Dkt. 130, p. 19). Specifically, the Court held that Akerman was entitled to an award in an amount equal to the fees it incurred since July 7, 2005, the date of Akerman's second proposal for settlement. (Id.)

2.    The Court has ordered Akerman to file this Second Amended Motion for Attorneys' Fees to address the amount of attorneys' fees to be awarded to Akerman. (Id.)

3. As set forth in Hill, Ward & Henderson, P.A.'s billing records (attached as Exhibit A), Akerman has incurred recoverable attorneys' fees in the amount of $310,878.50 since July 7, 2005.

4. The amount of Akerman's attorneys' fees is comprised of (1) $209,784.90 of fees incurred since July 7, 2005 relating to the defense of this case in the trial court; (2) $56,678.00 of fees incurred relating to the litigation of entitlement to attorneys' fees; and (3) $44,415.60 of fees incurred relating to the defense of this case before the Eleventh Circuit Court of Appeals.

5. As set forth in the incorporated Memorandum of Law and the affidavits submitted in support thereof, the amount of fees incurred by Akerman is reasonable in light of, *inter alia*, the complexity of the case, the amount of damages sought by Plaintiff, and the extremely favorable results Akerman obtained in the lawsuit.

WHEREFORE, Akerman respectfully requests that this Court enter an order awarding Akerman an amount of $310,878.50, plus interest accrued from March 20, 2007 (the date Akerman's entitlement to fees was determined), and such further relief as this Court deems appropriate.

### Local Rule 3.01(g) Certification

Counsel for Akerman has conferred with counsel for Plaintiff in an attempt to resolve the issues raised in this Motion. Plaintiff's counsel objects to the relief sought herein.

## MEMORANDUM OF LAW

### I. INTRODUCTION

The factual background and history of this litigation has been well-documented in prior motions and briefs submitted to the Court, as well as the Court's prior Orders. For the sake of brevity, Akerman will not restate this background and history here. Akerman would refer the Court to its Statement of Undisputed Facts in Support of its Motion for Summary Judgment (Dkt. 70).

### II. ARGUMENT

As discussed below, Akerman should be awarded $310,878.50 (plus interest), which reflects the amount of recoverable attorneys' fees it has incurred since July 7, 2005. This amount of fees is reasonable in light of, *inter alia*, the complexity of the case, the amount of damages sought by Plaintiff, and the extremely favorable results Akerman obtained in the lawsuit.

**A. Akerman has Incurred $310,878.50 in Recoverable Attorneys' Fees Since July 7, 2005**

Under section 768.79(1) of the Florida Statutes, a party is entitled to recover reasonable costs and attorneys' fees incurred in prosecuting or defending the matter from the date of the proposal for settlement. See Strait v. Busch Entertainment Corp., 2007 WL 496605. at *1 (M.D. Fla. Feb. 12, 2007). The fees recoverable under the statute include all appellate attorneys' fees. See Hanft v. Church, 2003 WL 23812512 at *5, (S.D. Fla. Sept. 23, 2003) (attorneys' fees incurred in connection with appeal from judgment are recoverable under section 768.79); Matalon v. Lee, 847 So. 2d 1077, 1080 (Fla. 4th DCA 2003) (same). Additionally, any fees incurred in litigating entitlement to fees are recoverable. See

McMahan v. Toto, 311 F.3d 1077, 1085-86 (11th Cir. 2002) (attorneys' fees incurred from litigating the issue of entitlement to fees are recoverable under section 768.79) (citing State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 833 (Fla. 1993)). Fees incurred in litigating the amount of fees, however, are not recoverable. See id.

Akerman has attached to this Motion the billing records of its counsel, Hill, Ward & Henderson, P.A. ("HWH"). Exh. A. These records establish that Akerman has incurred recoverable attorneys' fees since July 7, 2005 in an amount of $310,878.50. Id. This amount is comprised of fees incurred relating to the defense of this case in the trial court, fees incurred relating to litigating the entitlement to attorneys' fees, and fees incurred relating to the defense of this case before the Eleventh Circuit Court of Appeals. Affidavit of Erik R. Matheney ("Matheney Affidavit"), ¶ 6.[1] This amount does not include fees Akerman incurred for litigating the amount of recoverable fees, which continue to accrue.[2]

**B.   Akerman's Requested Fee Award is Reasonable**

To determine whether a requested fee award is reasonable, a district court evaluates whether the hours expended on the litigation were reasonable and whether the hourly rate is reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). This is referred to as the lodestar approach. See ACLU v.

---

[1] Akerman is filing the affidavits of Raymond T. Elligett, William F. Jung, and Erik R. Matheney contemporaneously with this Motion. Docket numbers are not yet known for certain, and are therefore not cited.

[2] To allow the Court to more easily determine when Akerman's fees incurred for litigating entitlement to fees stopped, and when its fees incurred for litigating the amount of fees began, Akerman has calculated its recoverable attorneys' fees by including the fees incurred from July 7, 2005 to August 21, 2006, the date on which Akerman filed its Amended Motion for Attorneys' Fees. Although Akerman incurred additional fees regarding litigating its entitlement to fees after August 21, 2006, Akerman has stopped the calculation of its fees on August 21, 2006, the date of the filing of its Motion for Attorneys' Fees. This should offset any fees incurred by Akerman prior to August 4, 2006 associated with calculating the amount of fees.

Barnes, 168 F.3d 423, 427 (11th Cir. 1999); see also Fla. Patient's Com. Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985).

In support of this Motion, Akerman has submitted HWH's billing records and the affidavits of Raymond T. Elligett and William F. Jung, who are disinterested local attorneys. These documents speak for themselves and are sufficient on their own to establish the reasonableness of the hours expended and rates charged by HWH. See Schafler v. Fairway Park Condo. Assn., 324 F. Supp. 2d 1302, 1310 (S.D. Fla. 2004) ("attorney fee awards are generally based on affidavits and billing records submitted to the court"); Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1303-1304 (11th Cir. 1988) ("It is perfectly proper to award attorney's fees based solely on affidavits in the record"). Nevertheless, Akerman will spend the remainder of this Memorandum to explain, from the perspective of the ones involved in this litigation, why its requested fee award is reasonable.

**1.     The amount of hours HWH expended on the litigation was reasonable.**

This complex, legal malpractice case involved a serious claim by Plaintiff that Akerman negligently caused her to turn over to the Securities and Exchange Commission more than one-half of her assets, which she later valued at $115 million. (Dkt. 9-13.) The time period at issue in this Motion—July 7, 2005 through August 21, 2006—was the climax of this litigation and involved a substantial bulk of the work HWH performed on behalf of Akerman. Matheney Affidavit, ¶ 7. Specifically, this thirteen-month period included the last few months of contentious discovery; the summary judgment stage; Akerman's opposition to a critical motion for leave to amend to join additional plaintiffs; preparations for an imminent, full-blown trial; an appeal before the Eleventh Circuit Court of Appeals; a battle

over entitlement to attorneys' fees; and other miscellaneous matters, including a mediation. Id. at ¶ 7. Akerman will briefly address each of these general activities and demonstrate why the time spent on each was more than reasonable.

> *i.     The hours spent on discovery matters were reasonable.*

The last few months of discovery in this case involved, among other things:

- preparing, reviewing, and editing various discovery requests and responses;
- reviewing numerous documents produced by the parties and non-parties (including the Receiver Deborah Meshulam and Plaintiff's former bankruptcy and D.C. Court attorney, Harley Riedel);
- reviewing thousands of pages of documents from the D.C. Court proceeding and Bilzerian's bankruptcy proceedings;
- reviewing three boxes of audio tapes containing FBI recordings of Plaintiff's husband, Paul Bilzerian;
- preparing, reviewing, and editing discovery motions, including at least two motions to compel a motion for protective order, a motion to strike, and a motion to reopen discovery regarding Plaintiff's damages claims;
- performing legal research relating to discovery issues and motions;
- reviewing and analyzing responses from Plaintiff and Court orders regarding discovery issues;
- preparing for and attending a hearing on all outstanding discovery issues;
- preparing for, traveling to, scheduling, and attending multiple depositions, including the depositions of Plaintiff, the Receiver Ms. Meshulam, Paul Bilzerian (prepared for but cancelled due to summary judgment ruling), and Ernie Haire (same);
- preparing, reviewing, and editing various deposition summaries; and
- attending or otherwise engaging in numerous conferences and correspondence regarding the above.

Exh. A.

The amount of time HWH expended on these and other discovery matters was approximately 423.1 hours. Matheney Affidavit, ¶ 7; Exh. A. Given the nature and volume of these matters, this amount of time is reasonable.

   *ii.* *The hours spent during the summary judgment stage were reasonable.*

In September 2005, HWH prepared an extensive 20-page summary judgment motion on behalf of Akerman, which argued that (1) Akerman did not proximately cause Plaintiff's alleged losses; (2) Plaintiff could not recover losses allegedly suffered by certain non-party entities; (3) Plaintiff's claim was barred by the statute of limitations; and (4) Plaintiff could not recover emotional damages. (Dkt. 71.) HWH also prepared, *inter alia*, a detailed Statement of Undisputed Facts, recounting the lengthy litigation odyssey involving Paul Bilzerian, Plaintiff, their various off-shore trusts and entities, the SEC, and the Gray Robinson law firm. (Dkt. 70.) In order to effectively present these arguments and this factual background, HWH was required to, *inter alia*, prepare factual history charts and timelines and perform substantial legal research on issues such as causation in legal malpractice cases, speculative evidence offered to defeat summary judgment, standing, direct actions by entity shareholders, derivative claims, emotional damages claims, and the "impact rule." Exh. A.

In response to Akerman's motion, Plaintiff filed lengthy memoranda in opposition to both the summary judgment motion (Dkt. 83) and the Statement of Undisputed Facts (Dkt. 84). This did not end the vigorous dispute over the summary judgment motion, however, as the parties filed two more briefs, arguing primarily about the issue over the Children's Trust, which Plaintiff had injected into the litigation for the first time. (Dkt. 94, 97.)

The amount of time HWH expended during this contentious summary judgment stage was approximately 247.5 hours. <u>Matheney Affidavit</u>, ¶ 7; <u>Exh. A</u>. Given the nature and complexity of the issues involved—and the fact that HWH's efforts resulted in *a complete victory*—this amount of time is reasonable.

> *iii.   The hours spent responding to the motion for leave to amend were reasonable.*

Soon after Akerman filed its summary judgment motion, Plaintiff moved the Court for leave to amend her Complaint in order to join two of her and Bilzerian's entities as plaintiffs to this lawsuit. (Dkt. 87, 88.) This was in direct response to Akerman's argument in its summary judgment motion that Plaintiff did not have standing to recover the damages suffered by these non-party entities. The importance of defeating this motion by Plaintiff cannot be overstated—if Plaintiff were allowed to add these parties as plaintiffs, and if Akerman's summary judgment motion was denied on the other grounds, Akerman's potential exposure would have grown from approximately $25,000.00 to $115,000,000.00. In addition, the amendment would have caused the postponement of the upcoming trial and the complete reopening of discovery, which would have resulted in a substantial amount of additional time and money being devoted to this lawsuit by counsel for Akerman.

In order to defeat this critical motion, HWH prepared a detailed 20-page memorandum in opposition on behalf of Akerman, arguing that the motion should be denied because (1) Plaintiff failed to demonstrate good cause for violating the Court's scheduling order; (2) the untimely motion was the result of undue delay; (3) the amendment would cause Akerman undue prejudice; and (4) the amendment would be futile because the claims by the new plaintiffs would be barred by the statute of limitations and there would be a lack of

subject matter jurisdiction. (Dkt. 94.) To effectively present these arguments, HWH was required to perform substantial legal research on issues such as the application of Rule 16(b) of the Federal Rules of Civil Procedure and what constitutes "good cause"; the application of Rule 15(a); what constitutes undue delay and undue prejudice under Rule 15(a); relation back of amendments under Rule 15(c); bankruptcy "related-to" jurisdiction; and the interplay between Rules 17(a) and 20(a) of the Federal Rule of Civil Procedure. (Id.); Exh. A.

The amount of time HWH expended to defend Akerman against this critical motion was approximately 111.7 hours. Matheney Affidavit, ¶ 7; Exh. A. Given the nature and importance of the matter—and the fact that HWH's efforts resulted in a denial of the motion—this amount of time is reasonable.

        *iv.*    *The hours spent preparing for the imminent trial were reasonable.*

Before the Court entered summary judgment in favor of Akerman in December 2005, the parties were preparing for the upcoming trial, which was scheduled for January 2006. The efforts necessary to prepare for a trial involving the factual background, history, and complicated issues in a case such as this should go without saying. Suffice it to say, HWH was required to engage in substantial pretrial preparations, including, *inter alia*, reviewing and analyzing countless documents in preparation for presenting evidence, preparing deposition designations, preparing witness outlines, conducting legal research on various evidentiary issues, and drafting motions in limine. Exh. A. With respect to motions in limine, HWH was in the process of preparing two substantial motions in limine at the time the Court ruled on Akerman's summary judgment motion. See id. One of these motions

sought to exclude evidence relating to the Children's Trust, which had recently become a hotly contested issue in the case. See id.

The amount of time HWH expended preparing for the upcoming trial was approximately 217.7 hours. Matheney Affidavit, ¶ 7; Exh. A. Given the nature and complexity of the litigation, this amount of time is reasonable.

    *v.*    *The hours spent litigating the appeal were reasonable.*

After this Court entered summary judgment in favor of Akerman, Plaintiff appealed the judgment to the Eleventh Circuit Court of Appeals. (Dkt. 108.) Although the issues were primarily the same as those argued in the summary judgment briefs before this Court, HWH nevertheless needed to put in a sufficient amount of time to zealously advocate on Akerman's behalf and preserve the judgment in its favor. Aside from the ordinary tasks associated with litigating an appeal, HWH took advantage of the opportunity to more fully develop Akerman's arguments. In particular, HWH spent time developing its argument with respect to the Children's Trust issue, which had only been briefly addressed by Akerman in its summary judgment reply brief (Dkt. 97), due to Plaintiff's raising the issue for the first time after the summary judgment motion was filed. Additionally, this critical appeal warranted the involvement of HWH's appellate specialist, Marie Borland, who took a lead role in preparing the appellate briefs. See Exh. A. Ms. Borland obviously had to review numerous pleadings, motions, and other documents to become familiar with this case, as well as review and conduct various legal research. Id.

The amount of time HWH expended in litigating the appeal of the summary judgment was approximately 173.1 hours. Matheney Affidavit, ¶ 7; Exh. A. Given the nature and

complexity of the issues involved—and the fact that HWH's efforts resulted in the summary judgment being affirmed—this amount of time is reasonable.

> vi. *The hours spent litigating entitlement to attorneys' fees were reasonable.*

Being the most recent chapter of this four-year lawsuit, the Court is familiar with the litigation over Akerman's entitlement to attorneys' fees. Given this fact, Akerman believes this section requires little explanation. However, Akerman would like to remind the Court that this category of work is not simply limited to Akerman's Amended Motion for Attorneys' Fees (Dkt. 121) and the dispute over whether section 768.79 applies in federal court. Instead, the litigation over entitlement to fees also includes Akerman's original motion for fees (Dkt. 104), Plaintiff's motion to essentially reopen discovery on fee issues (Dkt. 110), Akerman's 10-page memorandum in opposition (Dkt. 111), Plaintiff's response to Akerman's original motion for fees (Dkt. 117), Akerman's motion for leave to file a reply (Dkt. 118), and Plaintiff's memorandum in opposition (Dkt. 119). Matheney Affidavit, ¶ 7; Exh. A. Also, this category of litigation includes Akerman's application for fees in the Eleventh Circuit. Matheney Affidavit, ¶ 7; Exh. A.

The amount of time HWH expended during this contentious stage was 273.8 hours. Matheney Affidavit, ¶ 7; Exh. A. Given the nature and complexity of the issues involved—and the fact that HWH's efforts resulted in a ruling that Akerman was entitled to fees, as well as a ruling denying Plaintiff's efforts to reopen discovery—this amount of time is reasonable.

    *vii.* *The hours spent on other miscellaneous matters were reasonable.*

  In addition to the above, HWH performed legal work and spent time on other miscellaneous matters, including preparing for and attending a mediation and reviewing and evaluating documents regarding Plaintiff's bankruptcy proceeding and monitoring its status; Matheney Affidavit, ¶ 8; Exh. A. The amount of time HWH expended on these miscellaneous matters was 50.90 hours. Matheney Affidavit, ¶ 8; Exh. A. This amount of time is reasonable.

    *viii.* *Conclusion – the hours spent during this time period were reasonable.*

  According to its billing records, HWH worked a total of 1,318.2 hours and billed $310,878.50 from July 7, 2005 to August 21, 2006. Exh. A. During this period, HWH performed the substantial legal work discussed above and reflected in the billing records. This was all done in a case that involved nearly two decades of complex and complicated legal situations and orders, disgorgement and contempt proceedings, receiverships, asset freezes, bankruptcies, etc. with respect to Bilzerian, Plaintiff, and their various entities and off-shore trusts. Given the nature of Plaintiff's allegations, the historical backdrop, and the enormity of her damages claim, HWH had to utilize the services of a number of attorneys and legal assistants to adequately represent Akerman's interests.[3]

  It is important that the Court "bear in mind that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306.

---

[3] "A firm may be compensated for work performed by separate attorneys on the case so long as the attorneys' efforts are not unreasonably duplicative." Schafler v. Fairway Park Condo. Ass'n., 324 F. Supp. 2d 1302, 1314 (S.D. Fla. 2004).

Akerman readily admits that its attorneys dedicated a substantial amount of time to its defense in this case. But this was a complex matter involving a serious claim of malpractice with hundreds of millions of dollars at stake, and Akerman sought and deserved vigorous, zealous representation. And seeing as Akerman was victorious on every major battle in the case, including a summary judgment affirmed on appeal, it is certainly hard to argue with the results of HWH's hours. In sum, the hours put in by HWH in this case were reasonable.

### 2. The hourly rate charged by HWH was reasonable.

A reasonable hourly rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. "Proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work." Schafler, 324 F. Supp. 2d at 1313. "A court may also use it own judgment and expertise to make an appropriate independent assessment of the value of an attorney's services." Id.[4]

The affidavits of Tom Elligett and Bill Jung clearly establish that the hourly rates charged to Akerman by HWH were reasonable. In fact, both affiants eagerly admit that HWH's rates are cheap compared to other local firms with similar practice areas and reputations. Indeed, when one considers that the vast majority of the work in this matter was

---

[4] For assistance in determining a reasonable hourly rate, a district court may consider the twelve "*Johnson* factors." Schafler, 324 F. Supp. 2d at 1313. These factors are addressed by Tom Elligett in his affidavit submitted in support of the Motion.

done by attorneys charging between $150 to $260 per hour, it is difficult to credibly challenge the reasonableness of the rates charged to Akerman.

**C.    Akerman is Entitled to Recover Interest Accrued from March 20, 2007**

A party entitled to recover attorneys' fees from its opponent can recover the amount of interest that has accrued on the recoverable fees from the date the party's entitlement is determined. See Quality Engineered Installation, Inc. v. highly South, Inc., 670 So. 2d 929, 930-31 (Fla. 1996). In this case, the Court determined Akerman's entitlement to attorneys' fees in its Order dated March 20, 2007 (Dkt. 130). Therefore, Akerman is entitled to recover interest on $310,878.50 that has accrued since March 20, 2007.

### III.   CONCLUSION

For the foregoing reasons, Akerman is entitled to an award of attorneys' fees in an amount of $310,878.50, plus interest accrued since March 20, 2007.

Respectfully submitted,

s/ Erik R. Matheney
Benjamin H. Hill, III, Esq.,
Florida Bar No. 094585
Erik R. Matheney
Florida Bar No. 005411
Mark J. Criser
Florida Bar No. 141496
J. Scott Slater
Florida Bar No. 869171
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33602
Ph: (813) 221-2900; Fax: (813) 221-3900
bhill@hwhlaw.com, ematheney@hwhlaw.com,
mcriser@hwhlaw.com, sslater@hwhlaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of April, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and have also served the foregoing, via regular mail to: David A. Maney, Esq., 606 E. Madison, Tampa, Florida 33602, attorney for Plaintiffs.

s/ Erik R. Matheney
Attorney